IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUELL KEELER AND LUKE GOSSETT, Plaintiffs, V. TYSON FOODS, INC. Defendant. | § § § § § § § § § | CASE NO: _____ **JURY TRIAL DEMANDED** |

## PLAINTIFFS'S ORIGINAL COMPLAINT

COME NOW the Plaintiffs, SAMUELL KEELER and LUKE GOSSETT, (hereafter "Sam", Luke" or collectively, "Plaintiffs") hereby sue Defendant, TYSON FOODS, INC.**,** ("Tyson") and for cause would show the following:

### I.  PARTIES

Plaintiff, SAMUELL KEELER ("Plaintiff" or "Sam Keeler"), is a resident of the State of Oklahoma and lives in Bryan County, Oklahoma.

Plaintiff, LUKE GOSSETT ("Plaintiff" or "Luke Gossett"), is a resident of the State of Oklahoma and lives in Bryan County, Oklahoma.

Defendant, TYSON FOODS, INC., is a corporation incorporated in the State of Arizona and can be served with summons through its CEO, Donnie King, at its corporate headquarters at 2200 W Don Tyson Pkwy, Springdale, AR 72762.

### II. JURISDICTION AND VENUE

This court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

1

Venue properly lies within this District under 28 U.S.C. § 1391(b). The named defendants perform their official duties in this District, and the events and omissions giving rise to the Plaintiffs' claims occurred in this District.

### III. PROCEDURAL REQUIREMENTS

On December 13, 2021, Plaintiff, Sam Keeler, filed a Charge of Discrimination with the Equal Employment Opportunities Commission. In this charge Plaintiff asserted discrimination based on religion. On August 5, 2022, Plaintiff received his Notice of Right to Sue.

On December 13, 2021, Plaintiff, Luke Gossett, filed a Charge of Discrimination with the Equal Employment Opportunities Commission. In this charge Plaintiff asserted discrimination based on religion. On July 25, 2022, Plaintiff received his Notice of Right to Sue.

All conditions precedent to the filing of this suit have been met.

### IV. FACTS

a. Sam Keeler

On August 3, 2021, Tyson Foods Inc. President and CEO Donnie King announced the company's decision to mandate that all Tyson Foods Team Members in the United States be fully vaccinated by Nov. 1st 2021 as a condition of continued employment.

On August 17, 2021, Plaintiff, Sam Keeler, submitted his request for an exemption from Defendant's Covid vaccination mandate due to his sincerely held religious beliefs. On that same day Tyson, through its Human Resources manager, John Kyker, granted Sam's request offered as an "accommodation" that Sam would be put on unpaid leave of absence with no guarantee of current position or salary for one year, after which time he would be terminated – a policy that Tyson referred to as "leave of absence *plus*", or "LOA+".

On August 18, 2021, Sam was informed that his job was being posted because he held a "critical position" that needed to remain filled even though Tyson's official policy provided Sam until October 18th to accept the accommodations offered.

On October 11, 2021, Texas Governor Gregg Abbott issued Executive Order GA-40 prohibiting employers from mandating Covid-19 vaccinations.

On October 12, Tyson told Sam that he was expected to train his successor employee.

On November 1, 2021, Tyson terminated Plaintiff, Sam Keeler.

**b. Luke Gossett**

On August 18, 2021, one day after Sam Keeler, Plaintiff Luke Gossett submitted his request for an exemption from Tyson's Covid vaccination mandate due to his sincerely held religious beliefs.

On September 1, 2021, Tyson informed Luke Gossett that it accepted his request for an exemption from the Covid vaccine mandate due to his sincerely held religious beliefs and again offered the "accommodation" of its "LOA+" – one year's unpaid leave followed by termination unless Luke accepted the alleged vaccine. Luke declined the offer.

On November 1 2021, Tyson terminated Plaintiff, Luke Gossett.

**c. Other Covid-19 Policies**

In addition to the foregoing, prior to instituting its vaccine mandate, Tyson issued several Covid mitigation techniques that treated employees differently based on their religious beliefs. Tyson's "pilot program" allowed vaccinated team members to work without a mask and shield while unvaccinated team members had to wear a mask and shield at all times. After the Center for Disease Control issued guidelines requiring even vaccinated employees to wear face masks,

Tyson forced unvaccinated employees to wear *both* face masks and shields while allowing vaccinated employees to work with only masks and no face shields.

## IV. CAUSES OF ACTION

**COUNT ONE:  RELIGIOUS DISCRIMINATION**

Each of the Plaintiffs have timely informed Defendant of their sincerely held religious beliefs that prevented them from accepting the mandated "vaccines" into their bodies requested to be exempt from Tyson's mandatory Covid-19 vaccination policy.

Tyson approved the Plaintiffs' requests for religious exemption but has refused and continues to refuse to reasonably accommodate Plaintiffs' sincerely held religious beliefs. Unpaid leave, especially when offered as a prerequisite to receiving payment of already earned yearly bonuses does not constitute a "reasonable accommodation". As a result, Tyson discriminated against Plaintiffs on the basis of religion in violation of Plaintiffs' rights under Title VII of the Civil Rights Act of 1964 Chapter 21 of the Texas Labor Code. Consequently, Tyson is liable for Plaintiffs' injuries and damages alleged herein.

**COUNT TWO: WRONGFUL TERMINATION**

During officially declared states of emergency, like the instant Covid-19 pandemic, the Texas Legislature has delegated all emergency powers to the office of the governor. In such emergencies, therefore, Texas public policy is formulated by the Governor of Texas, not by legislative acts or refusals to act.

Texas Governor, Gregg Abbott, has officially proclaimed in executive order GA-40 that any attempts by employers to force or otherwise coerce their employees into accepting any alleged Covid-19 "vaccine", whether marketed under emergency use authorization or not, are illegal and contravene Texas public policy.

Texas common law recognizes a public policy exception to the employment-at-will doctrine. See, *Sabine Pilot v. Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). In *Sabine Pilot*, the employer ordered the employee in question to perform an illegal act and fired the employee for refusing to do so. The court found that discharging an employee under such circumstances contravenes Texas public policy.

In *Johnston v. Del Mar Distributing Co.*, 776 S.W2d 768 (Tex. 1989)  the Texas Supreme Court expanded upon that view and held that employers who fire employees for the mere act of inquiring into the legality of an employer's order violates Texas public policy.

Further, in *McClendon v. Ingersoll-Rand Co.*, 779 S.W.2d 69 (Tex. 1998) (reversed on other grounds, *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990)), the Texas high court held that an employer's discharge of an employee for the principal reason of avoiding payout of the employee's retirement benefits was contrary to Texas public policy. Consequently, instances in which the Texas Supreme Court has seen fit to provide a public policy exception to the employment at will doctrine go beyond situations where a terminated employee was actually or potentially exposed to criminal liability for following an employer's order.

Here, Defendant's discharge of Plaintiffs violated Executive Order GA-40, and thereby the public policy of Texas, because: (1) Defendant itself committed an illegal act by mandating that Plaintiff be vaccinated against Covid-19; (2) the Plaintiffs refused to succumb to Defendant's illegal mandate; (3) Defendant fired the Plaintiffs for refusing to be so vaccinated, and (4) the sole reason for the Plaintiffs' discharge was their refusal to succumb to the unlawful mandate.

The clear thrust of Texas Supreme Court case law is to prevent employers from discharging employees when such a discharge would openly contravene the public policy of

Texas. In both *Sabine Pilot* and *McClendon*-type cases, the focus is on the employer's actions that violate Texas public policy. In *Sabine Pilot*, the employer violated Texas public policy by ordering an employee to perform an illegal act and then firing the employee for refusing to do so. In *McClendon*, the employer violated Texas public policy by attempting to cheat the employee out of his retirement savings by firing him shortly before the employee's contractual retirement rights vested.

Here, similarly, the Defendant employer violated Texas public policy by imposing an unlawful mandate and then firing the Plaintiffs for refusing to comply with it. Thus, Plaintiffs' argument that the Texas Supreme Court should include yet another exception to the employment at-will doctrine for employers who violate Texas public policy is warranted by existing case law.

### COUNT THREE: DISPARATE-IMPACT DISCRIMINATION

As part of its "Covid-19 Pilot Program", Tyson allowed vaccinated team members to work without a mask and shield while unvaccinated team members, such as the Plaintiffs herein, had to wear a mask and shield at all times. Later, as CDC guidance changed to recommend that even vaccinated employees wear face masks while working at Tyson's facilities, Tyson still discriminated against unvaccinated employees by forcing them to wear both a face mask and a face shield simultaneously.

Tyson's program had a disparate impact on employees who submitted a request for an exemption from its Covid-19 vaccination mandate due to their sincerely held religious beliefs compared to those who did not. This is so because employees who chose not to be vaccinated were predominantly those who submitted religious exemption requests. Although this pilot program was facially neutral in that it claimed to distinguish only between vaccinated and

unvaccinated employees, its impact was demonstrably discriminatory against employees with sincerely held religious beliefs that conflicted with the vaccine mandate.

### COUNT FOUR: PROMISSORY ESTOPPEL

Tyson promulgated its Annual Incentive Plan (the "Plan") prior to 2021. The last revision of that Plan was made in February of 2021. Under that Plan, the Plaintiffs were to receive their individual year-end bonus payouts of $4,600.00 (Sam Keeler) and 4,287.00 (Luke Gossett), which was usually paid out during the week of Thanksgiving every year.

Through its Plan, Tyson held out its promise to the Plaintiffs that each would receive their respective bonus amount if the Plaintiff's performed their respective jobs at specified levels of diligence and competence during the most recent fiscal year. At the time of their termination on November 1, 2021, each of the Plaintiffs had performed his respective duties during the 2021 fiscal year that ended in September of 2021. The Plaintiffs' reliance on Tyson's promise was foreseeable to Tyson because each Plaintiff had performed his respective job duties at the required level of diligence and expertise. The Plaintiffs did substantially rely on Tyson's promise to their detriment and suffered the loss of their already earned year-end bonuses as a direct result of their substantial reliance.

The sole reason why Plaintiffs did not receive their respective year-end bonuses in 2021 was that, when Tyson granted the Plaintiffs' religious exemption requests, it informed the Plaintiffs that Tyson's proposed "accommodation" of their sincerely held religious objections to its COVID-19 vaccination mandate would be a one-year *unpaid* leave of absence ("LOA") which would then allow the Plaintiffs to receive their annual bonus payouts under the Plan for 2021.

Tyson termed this accommodation offer its "LOA-plus" policy. However, this LOA-plus policy would only go into effect if - and only if - the Plaintiffs agreed to accept the accommodation, which would have caused them to forfeit any and all potential claims against Tyson for wrongful termination and/or religious discrimination. Even if Plaintiffs had accepted Tyson's "LOA-plus" accommodation offer. Plaintiffs still would have lost their respective jobs and incomes. This put Plaintiffs into the untenable position of being forced to choose between receiving their annual performance bonus payouts under the Plan on the one hand and their right to commence legal action against Tyson in court for violating their civil rights. Defendant's actions were unconscionable which authorizes the imposition of punitive damages.

## V. DAMAGES

**A.     Compensatory Damages:**

By terminating Plaintiffs, Defendant caused Plaintiffs to incur compensatory damages in an amount in excess of the jurisdictional limits of this Court. Plaintiffs have suffered lost wages, loss of earnings capacity, lost benefits, lost bonuses, lost future earnings, mental anguish, inconvenience, and loss of enjoyment of life as a direct result of Defendant's unlawful actions against them.  Plaintiffs suffered these injuries as the result of Defendant's actions and in all reasonable probability will continue to suffer these injuries in the future.

**B.     Punitive Damages:**

By (1) tying the Plaintiffs' year-end bonus payouts to the Plaintiffs' acceptance of its unreasonable accommodation of one year's unpaid leave, (2) willfully choosing to terminate the Plaintiffs before the time of their proposed bonus payout, and (3) confronting Plaintiffs with the Hobson's choice of either forfeiting their legal right to sue Tyson for religious discrimination on the one hand or forfeiting their year-end bonuses on the other, Tyson acted unfairly,

unconscionably, recklessly, and in utter and conscious disregard of the Plaintiff's rights, thus authorizing punitive damages.

## VI.

## ATTORNEYS FEES

Plaintiffs request this Court award them reasonable and necessary attorney fees and costs. Plaintiffs retained the Woodfill Law Firm, PC, to represent them in this action and have agreed to pay reasonable and necessary attorney's fees.

WHEREFORE, Plaintiffs, SAMUELL KEELER and LUKE GOSSETT, respectfully request that the Court summon Defendant, TYSON FOODS, INC., to appear and answer herein, that the Court, after final trial hereof, order Defendant to compensate Plaintiffs for their damages, and grant such other and further relief, at law and at equity, to which Plaintiffs may show themselves entitled.

Respectfully submitted,

**WOODFILL LAW FIRM, P.C.**

*/s/ Jared R. Woodfill*
Jared R. Woodfill
Texas Bar Number 00788715
Federal Bar Number 17069
Kyle A. Pinkerton
Texas Bar Number 16016725
Federal Bar Number 101666
Email: woodfillservice@gmail.com (service only)
Email: jwoodfill@woodfilllaw.com (non-service only)
3 Riverway, Suite 750
Houston, Texas 77056
(713) 751-3080 Telephone
(713) 751-3058 Facsimile
*Attorneys for Plaintiffs*