IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SAMUELL KEELER AND LUKE GOSSETT, | § § § | |
| Plaintiffs | § § | NO. 4:22-CV-00905-SDJ |
| vs. | § § | |
| TYSON FRESH MEATS, INC., | § § | |
| Defendant. | § § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Sherry L. Travers
State Bar No. 00793097
stravers@littler.com
Ross G. Reyes
State Bar No. 24105707
rgreyes@littler.com

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201.2931
214.880.8100
214.880.0181 (Fax)

**ATTORNEYS FOR TYSON
FRESH MEATS, INC**.

# TABLE OF CONTENTS

**PAGE**

I.    SUMMARY OF TYSON'S ARGUMENT ................................................................ 1

II.    STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ......................... 1

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................ 2

IV.    ARGUMENT AND ANALYSIS ....................................................................... 5

    A.    Summary Judgment Standard .............................................................. 5

    B.    Plaintiffs' Claim of Religious Discrimination Fails as a Matter of Law. ............. 6

        1.    Plaintiffs' Conduct Undermines Their Religious Beliefs. ........................ 6

        2.    There is No Conflict Between the Policy and Plaintiffs' Religious Beliefs. ....................................................................................... 7

        3.    Plaintiffs' Requested Accommodation Would Have Created an Undue Hardship on Tyson. ..................................................... 11

    C.    Plaintiffs' Wrongful Termination Claim Lacks Merit. ......................................... 15

        1.    Tyson's Vaccine Mandate Does Not Violate Public Policy. .................. 15

        2.    Plaintiffs' Reliance on GA-40 is Preempted by Federal Law ................. 17

    D.    Plaintiffs' Claim of Disparate Impact Discrimination is Futile. .......................... 19

        1.    Unvaccinated Individuals are Not a Protected Class. ............................ 19

        2.    Tyson's "Covid-19 Pilot Program" is a Business Necessity. .................. 20

    E.    Plaintiffs' Claim of Promissory Estoppel Fails as a Matter of Law. .................. 20

V.    CONCLUSION ............................................................................................ 22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
411 U.S. 242 (1986)..........................................................................................5

*Aukamp-Corcoran v. Lancaster Gen. Hosp.*,
No. 19-5734, 2022 WL 507479 (E.D. Pa. Feb. 18, 2022) .....................................13

*Barrington v. United Airlines, Inc.*,
566 F. Supp. 3d 1102 (D. Colo. 2021)...................................................................14

*Bridges v. Houston Methodist Hosp.*,
543 F. Supp. 3d 525 (S.D. Tex. 2021)...................................................................16

*Brown v. Children's Hosp. of Phila.*,
794 Fed. App'x 226 (3rd Cir. 2020) .......................................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................5

*Collins v. Allied Pharmacy Mgmt., Inc.*,
871 S.W.2d 929 (Tex. App.—Houston [14th Dist.] 1994, no writ) .......................21

*Collins v. Walker*,
341 S.W.3d 570 (Tex. App.—Houston [14th Dist.] 2011, no pet.).......................21

*Creger v. United Launch All. LLC*,
571 F. Supp. 3d 1256 (N.D. Ala. 2021) ................................................................14

*Davis v. Fort Bend Cty.*,
765 F.3d 480 (5th Cir. 2014) ..................................................................................6

*Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*,
2023 WL 3467143 (S.D.N.Y. May 15, 2023) .......................................................14

*Egelkrout v. Aspirus, Inc.*,
No. 22-cv-118, 2022 WL 2833961 (W.D. Wis. July 20, 2022)..............................10

*Fallon v. Mercy Catholic Med. Ctr. of Southeastern Pa.*,
877 F.3d 487 (3rd Cir. 2017) ..................................................................................9

*Finkbeiner v. Geisinger Clinic*,
No. 4:21-CV-01903, 2022 WL 3702004 (M.D. Pa. Aug. 26, 2022) ......................10

**PAGE**

*Galvez v. Tornado Bus. Co.*,
   No. 05-13-00993-CV, 2015 WL 1730175 (Tex. App.—Dallas Apr. 15, 2015,
   pet. denied) ...................................................................................................................21, 22

*Hansard v. Johns–Manville Prod. Corp.*,
   1973 WL 129 (E.D. Tex. 1973) ..................................................................................7

*Hayes v. Univ. Health Shreveport, LLC*,
   2021-1601 (La. 1/7/22), 332 So. 3d 1163 ................................................................16

*Horvath v. City of Leander*,
   946 F.3d 787 (5th Cir. 2020) .....................................................................................6

*Hussein v. The Waldorf-Astoria*,
   134 F. Supp. 2d 591 (S.D.N.Y. 2001) ........................................................................7

*Johnson v. Tyson Foods*,
   580 F. Supp. 3d 382 (N.D. Tex. 2022) ....................................................................18

*Jones v. TEK Indus., Inc.*,
   319 F.3d 355 (8th Cir. 2003) .....................................................................................7

*Lawhead v. Brookwood Mgmt. Co.*,
   No. 5:22-cv-00886, 2023 WL 2691718 (N.D. Ohio Mar. 29, 2023).......................10

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) (en banc) (per curiam)..................................................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).....................................................................................................5

*McClain v. Lufkin Indus.*,
   519 F.3d 264 (5th Cir. 2008) ...................................................................................19

*McClendon v. Ingersoll-Rand Co.*,
   779 S.W.2d 69 (Tex. 1989).......................................................................................15

*Montgomery Cnty. Hosp. Dist. v. Brown*,
   965 S.W.2d 501 (Tex. 1998)......................................................................................15

*Nat'l Meat Ass'n. v. Harris*,
   565 U.S. 452 (2012)...................................................................................................17

*O'Hailpin v. Hawaiian Airlines, Inc.*,
   583 F. Supp. 3d 1294 (D. Haw. 2022) ....................................................................14

*Pacheco v. Mineta*,
   448 F.3d 783 (5th Cir. 2006) ................................................20

*Passarella v. Aspirus, Inc.*,
   No. 22-CV-287-JDP, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023) ....................10

*Smith v. United Refining Co.*,
   1980 WL 98 (W.D. Pa. Jan. 30, 1980) ................................................12

*Tiano v. Dillard Dep't Stores, Inc.*,
   139 F.3d 679 (9th Cir. 1998) ................................................8

*Trans World Airlines, Inc. v. Hardison*,
   432 U.S. 63 (1977) ................................................11

*Troulliet v. Gray Media Grp., Inc.*,
   No. 22-5256, 2023 WL 2894707 (E.D. La. Apr. 11, 2023)................................................9

*Vetter v. Farmland Indus.*,
   120 F.3d 749 (8th Cir. 1997) ................................................8

*Wazelle v. Tyson Foods, Inc.*,
   No. 2:20-CV-203-Z, 2021 WL 2637335, at *3 (N.D. Tex. June 25, 2021),
   *vacated and remanded on other grounds*, 2022 WL 4990424 (5th Cir. Oct. 03,
   2022) ................................................18

*Wren v. T.I.M.E.-D.C., Inc.*,
   595 F.2d 441 (8th Cir. 1979) ................................................5, 11, 12

**Statutes**

29 U.S.C.A. § 654................................................20

21 U.S.C. § 608................................................17

21 U.S.C. § 678................................................17, 18

42 U.S.C. § 2000e-2(a)(1)................................................19

**Other Authorities**

9 C.F.R. § 416.2(b) ................................................17

9 C.F.R § 416.5(b) ................................................17

9 C.F.R. § 416.5(c)................................................17, 18

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**</u>

## I.   SUMMARY OF TYSON'S ARGUMENT

Plaintiffs Samuell Keeler ("Keeler") and Luke Gossett ("Gossett") (collectively, "Plaintiffs") bring suit against Tyson Fresh Meats, Inc. ("Tyson" or the "Company") asserting claims for failure-to-accommodate religious discrimination, wrongful termination, disparate impact discrimination, and promissory estoppel. Each of Plaintiffs' claims fail as a matter of law and warrant dismissal.

Plaintiffs' religious discrimination claim fails as Plaintiffs cannot establish the requisite *prima facie* case, and their requested accommodation would have created an undue hardship on Tyson. Plaintiffs' claim of wrongful termination lacks merit as Plaintiffs were at-will employees, and their termination of employment did not violate Texas public policy. Plaintiffs' claim of disparate impact lacks merit as unvaccinated individuals do not qualify as a protected class. Lastly, Plaintiffs' promissory estoppel claim is futile as Plaintiffs were at-will employees.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

(A)   Whether Tyson is entitled to summary judgment on Plaintiffs' claim of failure-to-accommodate religious discrimination under Title VII of the Civil Rights Act of 1964.

(B)   Whether Tyson is entitled to summary judgment on Plaintiffs' claim of wrongful termination.

(C)   Whether Tyson is entitled to summary judgment on Plaintiffs' claim of disparate impact discrimination.

(D)   Whether Tyson is entitled to summary judgment on Plaintiffs' claim of promissory estoppel.

### III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

*Tyson's Sherman, Texas Facility and Equal Employment Policies*

Tyson produces protein products in facilities throughout the United States.  Exhibit 1, Declaration of John Kyker ("Kyker Decl."), at ¶ 3.  Tyson operates a Case Ready plant in Sherman, Texas.  Case Ready products are protein products that can immediately be stocked onto shelves. *Id.*  The Sherman, Texas facility employs approximately 1,800 team members to work in its beef, ground beef, and pork departments.  *Id.*

Tyson maintains an Equal Employment Opportunity Policy that prohibits employment decisions based on race, color, religion, sex, sexual orientation, national origin, age, disability, veteran status or other classification protected by law. Exhibit A, Kyker Decl., ¶ 4.  Tyson also maintains a Harassment and Discrimination policy that prohibits any form of illegal harassment, discrimination, intimidation, or retaliation in the workplace. Exhibit B, Kyker Decl., ¶ 5.  In addition, team members are advised they can report any suspected violations of the law or company policies by contacting their supervisor, a member of their management team or their local HR representative, or contacting the Ethics & Compliance Department. Kyker Decl., at ¶ 5.

Each of the above policies is clearly communicated to all team members at various times throughout their employment, such as the time of hire and when Tyson requires employees to undergo recurrent training. *Id.*, at ¶ 6.

*Tyson's Response to the COVID-19 Pandemic*

From the beginning of the COVID-19 pandemic, Tyson implemented various COVID-19 policies designed to ensure its employees stayed safe and healthy throughout the pandemic.  For example, Tyson implemented its COVID-19 Pilot Program ("Pilot Program"), which required unvaccinated employees to wear masks and face shields while at work. *Id.*, at ¶ 7.

On August 3, 2021, Tyson announced it would require its U.S. workforce to receive the COVID-19 vaccine on or before November 1, 2021. *Id.*, at ¶ 8. Tyson later distributed its COVID-19 Vaccination Policy (the "Policy") to all U.S. team members. Exhibit C, Kyker Decl., ¶ 8. Tyson took steps to ensure the Policy was fair and addressed the needs of its team members. Kyker Decl., at ¶ 9. Tyson provided reasonable accommodations to employees who could not receive, or objected to receiving, the COVID-19 vaccine due to a sincerely held religious belief, practice, or observance. *Id.* Those employees who sought a religious accommodation from the Policy were required to submit such requests to Human Resources via Tyson's Reasonable Religious Accommodation Request Form. *Id.*, at ¶ 10. Tyson's receipt of a vaccination accommodation request initiated an interactive process between the requesting employee and Tyson to evaluate the accommodation request and to consider what type of reasonable accommodation, if any, was available in the specific circumstance presented by the individual employee. *Id.*

As part of the interactive process, Tyson's Human Resources personnel discussed with the requesting employee potential reasonable accommodations that were consistent with Tyson's objective of protecting the health and safety of its workforce, including the requesting employee, and other persons who interacted with Tyson's employees. *Id.*, at ¶ 11. The nature of Tyson's business requires most plant-based employees to work in-person and inside a facility. *Id.* Because unvaccinated employees in non-remote positions posed a direct threat to others, and alternatives to the vaccine (*e.g.*, masking and social distancing) would not demonstrably eliminate that threat, Tyson determined an available accommodation for employees who refused to be vaccinated and could not work remotely was its Leave of Absence Plus ("LOA Plus") program. *Id.*

Under the LOA Plus program, a team member who qualified for a disability or religious exemption could elect to take an unpaid leave of absence—potentially for up to one year,

depending on the team member's length of service with Tyson.  *Id.*, at ¶ 12.  Employees on the LOA Plus program could elect to use accrued paid vacation time while on leave. *Id.*  Further, employees who elected to participate in LOA Plus continued to receive Company health care benefits, with Company premium contributions, and were eligible to receive their annual year-end bonus for 2021.  *Id.*

*Plaintiffs' Requests for Religious Exemption*

On August 14, 2021, Mr. Keeler requested an exemption from the Policy. Exhibit D, Kyker Decl., ¶ 13.  Mr. Keeler's request for an accommodation stated, as a Christian, he takes all decisions to God first and he was led by the Spirit not to take the vaccine.  Exhibit D, Kyker Decl. Mr. Keeler's request also indicated his opposition to receiving the vaccine was tied to his beliefs surrounding abortion.  *Id.*  Mr. Keeler worked as a Training Specialist at Tyson's plant in Sherman, Texas.  Kyker Decl., at ¶ 14.  His job duties included the implementation of various programs related to training, onboarding, and other personnel-related programs.  *Id.*  Mr. Keeler's position had more than 15 direct reports for whom he provided daily oversight.  *Id.*

On August 18, 2021, Mr. Gossett requested an accommodation.  Exhibit E, Kyker Decl., ¶ 15.  Mr. Gossett identified his religion as "Christian and a believer in Jesus Christ."  Exhibit E, Kyker Decl.  Rather than receive the COVID-19 vaccine, Mr. Gossett proposed Tyson continue to require "face shields, temperature scans, social distancing, and self-COVID-19 measures."  *Id*. Mr. Gossett worked as a Maintenance Supervisor at Tyson's plant in Sherman, Texas.  Kyker Decl., at ¶ 16.  In his role, Mr. Gossett supervised a team of maintenance technicians who perform maintenance on Tyson's production floor equipment.  *Id*.

Due to Mr. Keeler's and Mr. Gossett's positions and responsibilities, it was necessary that they remain on-site to perform their job duties.  Kyker Decl., at ¶ 18.  Because Mr. Keeler's and

Mr. Gossett's positions could not be performed remotely, Tyson offered them a reasonable accommodation in the form of LOA Plus. *Id.* Both Mr. Keeler and Mr. Gossett chose not to participate in LOA Plus. *Id.* On November 1, 2021, Mr. Keeler's and Mr. Gossett's employment with Tyson ended due to their refusal to abide by the Policy or accept the reasonable accommodation offered to them, *i.e.*, LOA Plus. *Id.*, at ¶ 19.

On October 27, 2022, Tyson provided Mr. Keeler and Mr. Gossett with unconditional offers of reinstatement. *Id.*, at ¶ 20. Although the positions Mr. Keeler and Mr. Gossett held prior to their employment ending were not available, Tyson provided them with the closest salaried/management-level position available at that time. *Id.* Despite Tyson's invitation for Mr. Keeler and Mr. Gossett to return to work for Tyson, they declined to do so. *Id.*

## IV.    ARGUMENT AND ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is required when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Facts are material only if they "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 248 (1986). A material factual dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To defeat summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the contrary, a nonmovant can avoid summary judgment only by presenting evidence—not conclusory allegations, speculation, and unsubstantiated assertions—"sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (citations omitted).

## B.    Plaintiffs' Claim of Religious Discrimination Fails as a Matter of Law.

To succeed on their failure-to-accommodate religious discrimination claim, Plaintiffs must first establish a *prima facie* case by demonstrating the following: (1) they held a bona fide religious belief, (2) their belief conflicted with a requirement of their employment, (3) Tyson was informed of their belief, and (4) they suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 485 (5th Cir. 2014) (citing *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013)).

If Plaintiffs establish a *prima facie* case, the burden of proof shifts to Tyson to show it provided a reasonable accommodation or there was undue hardship which hindered it from providing a reasonable accommodation. *Id.*  Once Tyson demonstrates it provided a reasonable accommodation or that any requested accommodation by Plaintiffs would create an undue hardship on Tyson, it has successfully satisfied its obligations under Title VII. *See Horvath v. City of Leander*, 946 F.3d 787, 791 (5th Cir. 2020).

Plaintiffs are unable to present a *prima facie* case of failure-to-accommodate religious discrimination, as they cannot satisfy the first and second elements.

### 1.    Plaintiffs' Conduct Undermines Their Religious Beliefs.

Plaintiffs allege the COVID-19 vaccines use fetal cell lines and cultures. *See generally* Exhibits D and E, Kyker Decl.  Based on this unsupported understanding, Plaintiffs assert receipt of the COVID-19 vaccine impinges upon their sincerely held religious beliefs.  Stated differently, Plaintiffs oppose using products tested, developed, or produced through aborted fetal cells. Plaintiffs' prior conduct undermines such a position.  Specifically, Plaintiffs previously received

the Influenza vaccine[1] and took medications—such as Tylenol/Acetaminophen, ibuprofen, and Aspirin[2]—which are tested and/or developed using fetal cell lines.[3]  Such contradictory conduct evidences the insincerity of Plaintiffs' alleged religious beliefs, which results in Plaintiffs being unable to satisfy the first element of their *prima facie* case.  *See Hansard v. Johns–Manville Prod. Corp.*, 1973 WL 129, at *2 (E.D. Tex. 1973) (holding that plaintiff "failed to demonstrate the requisite sincerity of religious convictions to make out a prima facie case under Title VII" due to his inconsistency between his actions and beliefs); *Hussein v. The Waldorf-Astoria*, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001) (holding the plaintiff failed to establish a bona fide religious belief because his prior and subsequent actions were inconsistent with the alleged religious belief).

### 2.     There is No Conflict Between the Policy and Plaintiffs' Religious Beliefs.

To show they are entitled to relief under Title VII, Plaintiffs must allege a plausible conflict between a bona fide "religious" belief and an employment requirement.  *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003).  There is no dispute Tyson granted Plaintiffs' requests for a religious accommodation to the Policy.  Kyker Decl., ¶ 18.  Thus, neither Plaintiff was required to receive a COVID-19 vaccine, and both were offered the opportunity to participate in LOA Plus.  Plaintiffs nevertheless claim a conflict exists between their religious beliefs and the Policy.

Not all sincerely held beliefs are protected under Title VII.  EEOC Compliance Manual, Section 12-I.A.1, 2008 WL 3862103 (definition of "religion").  To qualify for protection, the belief must be "religious" in nature, meaning that it concerns "ultimate ideas about life, purpose, and

---

[1] Exhibit 2, Plaintiff Gossett's Answers to Tyson's First Set of Interrogatories, at p. 5 (Interrogatory No. 14); Exhibit 3, Deposition of Plaintiff Keeler ("Keeler Dep."), at 88:18–24.

[2] Exhibit 2, at pp. 5–6 (Interrogatory No. 15); Exhibit 4, Plaintiff Keeler's Answers to Tyson's First Set of Interrogatories, at pp. 5–6 (Interrogatory No. 15).

[3] *See* WebMD, Some Medications Also Tied to Religious Vaccine Exemption, https://perma.cc/DEA6-6MGF (stating many common medications—including acetaminophen, aspirin, and ibuprofen—use fetal cell lines during research and development).

death." *Id.*; *see Brown v. Children's Hosp. of Phila.*, 794 Fed. App'x 226, 227 (3rd Cir. 2020) ("[T]o state a claim under this statute, it is not sufficient merely to hold a 'sincere opposition to vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious belief.'").  The belief must be "part of a comprehensive religious belief system and . . . not simply an 'isolated teaching.'" EEOC Compliance Manual, Section 12-I.A.1, 2008 WL 3862103.

While courts generally apply a broad interpretation to the definition of a "religion," "Title VII does not protect social, political, or economic views or personal preferences."  What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, U.S. EEOC,     L.2.,     https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L (last accessed on October 23, 2023).

It is well-established that "[a]n employer need not accommodate a purely personal preference."  *Vetter v. Farmland Indus.*, 120 F.3d 749, 751 (8th Cir. 1997) (quotation omitted); *see also Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998) ("Title VII does not protect secular preferences.").  "Thus, objections to a COVID-19 vaccination requirement that are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs, practices, or observances under Title VII."  What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, U.S. EEOC, L.2., https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L (last accessed on October 23, 2023).  "In assessing whether beliefs are religious, [courts] consider whether they address fundamental and ultimate questions having to do with deep and imponderable matters, are comprehensive in nature, and are accompanied by certain formal and external signs."  *Brown*, 794 Fed. App'x at 227 (quotations omitted) (dismissing

plaintiff's Title VII challenge to flu vaccine requirement because plaintiff did not plausibly allege that her objection to the vaccine was "religious").

Assuming for purposes of this motion only that Plaintiffs' beliefs that the COVID-19 vaccines were developed with fetal cell lines and cultures, Plaintiffs do not provide any factual or evidentiary support that such a premise is part of their religious beliefs.  In fact, Plaintiffs do not provide *any* evidence, nor could they, that it is a tenet of their religion that the COVID-19 vaccines were developed "with fetal cell lines."  Rather, they state this as a purported "fact" upon which they base their refusal to be vaccinated.  Such an allegation has nothing to do with religion.  Rather, it is based on Plaintiffs' medical and personal beliefs which fall outside of Title VII protection. *See, e.g.*, *Fallon v. Mercy Catholic Med. Ctr. of Southeastern Pa.*, 877 F.3d 487, 492 (3rd Cir. 2017) ("[T]he basis of [plaintiff's] refusal of the flu vaccine--his concern that the flu vaccine may do more harm than good--is a medical belief, not a religious one.").  Put simply, Plaintiffs' unfounded allegations regarding the use of fetal line cells and cultures do not plausibly state a conflict between a "religious" belief and the Policy.  In fact, as discussed above, Plaintiffs' own conduct demonstrates their religious beliefs do permit them to receive vaccines and/or take medications that use fetal line cells and cultures.

Several courts across the country have dismissed similar Title VII challenges to employer COVID-19 policies:

- *Troulliet v. Gray Media Grp., Inc.*, No. 22-5256, 2023 WL 2894707, at *5 & n.2 (E.D. La. Apr. 11, 2023) (granting Rule 12 dismissal of Title VII challenge to employer COVID-19 vaccine policy where the "complaint is replete with medical arguments why [the employer's] policy was inadvisable" but no religious reasons).

- *Lawhead v. Brookwood Mgmt. Co.*, No. 5:22-cv-00886, 2023 WL 2691718, at *4 (N.D. Ohio Mar. 29, 2023) (dismissing Title VII claim because plaintiff's opposition to vaccines "sound in medical and political concerns" not religious beliefs).

- *Passarella v. Aspirus, Inc.*, No. 22-CV-287-JDP, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 10, 2023) (dismissing plaintiffs' Title VII challenge to COVID-19 vaccination requirement because plaintiffs "couched their requests in religious terms, claiming that their decisions had been ratified by prayer. But the use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion.").

- *Finkbeiner v. Geisinger Clinic*, No. 4:21-CV-01903, 2022 WL 3702004, at *4 (M.D. Pa. Aug. 26, 2022) (dismissing Plaintiff's Title VII challenge to COVID-19 testing requirement because plaintiff's "statement--which centers on her free will and belief that Covid-19 vaccines and tests are harmful and unnecessary--fails to establish sincere religious opposition" to COVID-19 testing).

- *Egelkrout v. Aspirus, Inc.*, No. 22-cv-118, 2022 WL 2833961, at *3 (W.D. Wis. July 20, 2022) (dismissing Title VII challenge to employer's COVID-19 testing requirement because "plaintiff opposed the testing for personal and medical reasons" not a religious reason).

This Court, too, should dismiss Plaintiffs' Title VII claim as there is no conflict between a *religious* belief and the Policy.  Plaintiffs' opposition is based on their own personal and medical preferences, not religion, which is evident by Plaintiffs' testimony conceding that Tyson employees identifying as Christian—the same religion as Plaintiffs—received the COVID-19 vaccine.[4]  Because there is no conflict between a religious belief held by Plaintiffs and the Policy,

---

[4] Exhibit 5, Deposition of Plaintiff Gossett ("Gossett Dep."), at 83:25–84:3; Keeler Dep., at 45:15–24.

Plaintiffs are unable to satisfy the second element of their *prima facie* case, which warrants dismissal of their claim.

### 3.      Plaintiffs' Requested Accommodation Would Have Created an Undue Hardship on Tyson.

Assuming *arguendo* Plaintiffs are able to present a *prima facie* case of religious discrimination, which they cannot, their claim remains flawed as Plaintiffs' requested accommodation would have created an undue hardship on Tyson.

Rather than receive the COVID-19 vaccine or participate in LOA Plus, Plaintiffs proposed as an alternative that they wear personal protective equipment ("PPE"), *e.g.*, face shield, mask, receive temperate scans, and practice social distancing.  *See* Exhibits D and E, Kyker Decl.  As explained below, Plaintiffs' requested accommodation—which permitted them to remain unvaccinated while working in close-proximity to their co-workers—posed an undue hardship on Tyson.

Recently, in *Groff*, the Supreme Court revisited the precedent it set in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), after which the "more than a *de minimis* cost" test became "the authoritative interpretation of the statutory term 'undue hardship.'"  *Groff*, 143 S. Ct. at 2291–92.  In revisiting *Hardison*, the Court in *Groff* held that "*Hardison* cannot be reduced to that one phrase," *i.e.*, "more than a *de minimis* cost," because "[i]n describing an employer's 'undue hardship' defense, *Hardison* referred repeatedly to 'substantial' burdens."  *Id.* at 2294.  Thus, the *Groff* Court clarified the oft-quoted "*de minimis* cost" language does not define the standard for finding an undue hardship; rather, *Hardison* stands for the proposition "'undue hardship' is shown when a burden is substantial in the overall context of the employer's business."  *Id.*  In reaching this conclusion, the Supreme Court made clear that *Groff* does not represent a departure from *Hardison*'s undue hardship standard, but rather, "clarif[ies] what Title VII requires."  *Id.* at 2286.

In satisfying its burden of showing undue hardship, Tyson demonstrates that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of [Tyson's] particular business." *Id.* at 2295.  Although the Supreme Court did not define "substantial increased costs," it stressed the importance of a case-by-case analysis and stated courts "must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Id.*

In their positions (Mr. Keeler as a Training Specialist and Mr. Gossett as a Maintenance Supervisor), Plaintiffs worked in close proximity to other Tyson employees.  Kyker Decl., ¶ 17. By remaining unvaccinated and potentially exposing other Tyson employees to COVID-19, Plaintiffs' unvaccinated status would have materially increased the risk of production shutdowns inevitably costing Tyson millions of dollars.[5]  In 2020, Tyson temporarily closed five plants in four states as a result of the COVID-19 pandemic.[6]  Permitting unvaccinated employees to work, inevitably resulting in plants continuously shutting down, clearly creates a burden that is more than sufficient to raise the "undue hardship" defense.  *See, e.g.*, *Smith v. United Refining Co.*, 1980 WL 98, at *6, 10 (W.D. Pa. Jan. 30, 1980) (undue hardship exists if accommodation would "expos[e] [employer] to a substantial risk of costly delays" and "substantial monetary losses resulting from delays caused by [employee]'s absence"); *Wren v. T.I.M.E.-D.C., Inc.*, 595 F.2d 441, 443, 445

---

[5] *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (discussing the benefits, effectiveness, and sustained protections provided COVID-19 vaccines, as well as their preference over alternative preventions).

[6] *See* Tyson Fresh Meats Temporarily Pausing Production at Dakota City, Neb., Beef Plant, https://www.tysonfoods.com/news/news-releases/2020/4/tyson-fresh-meats-temporarily-pausing-production-dakota-city-neb-beef (providing a summary of the various Tyson plants throughout the United States temporarily shutting down in 2020).

(8th Cir. 1979) (undue hardship exists if accommodation would cause "foreseeable" unavailability that "may result in delay" at additional cost).

In addition to potential economic costs associated with plant shutdowns, Plaintiffs' accommodation would have resulted in grave safety concerns. *Groff* was not a COVID-19 vaccination case. Critically, at the point in time in which Tyson considered implementing its Policy, millions of Americans tested positive for COVID-19, and hundreds of thousands of individuals died as a direct result of COVID-19. *See* COVID Data Tracker Weekly Review: Interpretative Summary for July 30, 2021, https://stacks.cdc.gov/view/cdc/108434.

In *Groff*, the Supreme Court emphasized that "a good deal of the EEOC's guidance in this area is sensible and will, in all likelihood, be unaffected by our clarifying decision today." *Id*. at 2296. Tyson refers the Court to EEOC guidance on the topic of undue hardship issued in 2021 in connection with the COVID-19 pandemic. *See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. Therein, the EEOC explains that "[c]osts to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business-including, in this instance, the risk of the spread of COVID-19 to other employees or to the public." *Id.* at L.2–L.3

Numerous courts around the country analyzing employer vaccine mandates consider the safety and health risks that unvaccinated employees pose to other individuals as part of the undue hardship analysis. *See, e.g.*, *Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. 19-5734, 2022 WL 507479, at *6–*8 (E.D. Pa. Feb. 18, 2022) (granting employer's motion for summary judgment and holding "an employer is not required to grant a proposed accommodation that would either cause or increase safety risks or the risk of legal liability for the employer" as permitting even one

13

more unvaccinated employee "increases the risk that vaccine-preventable disease will spread");
*O'Hailpin v. Hawaiian Airlines, Inc*., 583 F. Supp. 3d. 1294, 1309–10 (D. Haw. 2022) (finding
unlikelihood of success on the employees' Title VII claim due to the undue hardship created by
"the increased risk that unvaccinated employees in close quarters pose to other employees" and
the difficulty of scheduling unvaccinated employees); *Barrington v. United Airlines, Inc.*, 566 F.
Supp. 3d 1102, 1109 (D. Colo. 2021) (finding plaintiffs not likely to prevail on Title VII claim
because unvaccinated employees are "the greatest risk of transmission of COVID-19" by
threatening the lives of their vaccinated coworkers through "break-through cases"); *Creger v.
United Launch All. LLC*, 571 F. Supp. 3d 1256, 1264 (N.D. Ala. 2021) (denying preliminary
injunction of an employer's COVID-19 vaccine mandate partly because it caused the employer
undue hardship in creating a healthy and safe workplace); *Dennison v. Bon Secours Charity Health
Sys. Med. Grp., P.C.,* 2023 WL 3467143, at *6 n.7 (S.D.N.Y. May 15, 2023) ("[T]here is also the
obvious hardship associated with the increased health and safety risk posed to other employees . . .
by allowing Plaintiffs to remain unvaccinated, . . . and the risk of civil liability to anyone infected
by an unvaccinated employee.").

From the very start of the COVID-19 pandemic, Tyson endeavored to stay ahead of the
curve by following CDC guidance, including social distancing, disinfecting surfaces, and
enforcing a face mask policy.  As a continuation of these mitigation measures, and given the CDC's
vaccine recommendation and employee concerns regarding working in proximity to unvaccinated
employees, Tyson implemented its Policy.  Ultimately, when considering Plaintiffs' request to be
exempt from the Policy (and thus remain unvaccinated while continuing to work in close proximity
with other employees), Tyson determined accommodating Plaintiffs' request would inevitably
jeopardize employee safety because the nature of Tyson's business requires onsite presence.

14

Because Plaintiffs' requested accommodation would have created an undue hardship on Tyson, their claim of religious discrimination fails and should be dismissed.

## C.     Plaintiffs' Wrongful Termination Claim Lacks Merit.

Plaintiffs contend Tyson wrongfully terminated their employment as Tyson's vaccine mandate violated public policy and is prohibited by Governor Abbott's Executive Order GA-40.

### 1.     Tyson's Vaccine Mandate Does Not Violate Public Policy.

Employment in Texas is presumed to be at-will, meaning an employer or employee may terminate the employment relationship at any time, and for any or no reason. *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).  Over the years, Texas courts have provided only two public policy exceptions to the employment at-will doctrine. *See generally McClendon v. Ingersoll-Rand Co.*, 779 S.W.2d 69 (Tex. 1989) (realizing an exception when the principal reason for an employee's discharge was the employer's desire to avoid contributing or paying benefits under the employer's pension fund); *Sabine Pilot Serv., Inc.*, 687 S.W.2d at 735 (Tex. 1985) (recognizing a narrow exception for an employee discharged "for the sole reason that the employee refused to perform an illegal act.").

Plaintiffs, relying on GA-40, argue a new public policy exception to at-will employment should be created.  On October 11, 2021, Governor Abbott issued Executive Order GA-40 prohibiting employers from compelling employees to receive the COVID-19 vaccine if said employees objected for medical or religious reasons.  Texas EO GA-40 (Oct. 11, 2021). Importantly, GA-40 did not prohibit vaccine requirements or address an employer's ability to terminate employment relationships based on whether an employee is vaccinated.  Rather, GA-40 provided the two grounds for exemption, medical and religious:

> No entity in Texas can compel receipt of a COVID-19 vaccine by any individual, including an employee or a consumer, who objects to such vaccination [1] for any reason of personal

conscience, based on a religious belief, or [2] for medical reasons, including prior recovery from COVID-19.

Texas EO GA-40 (Oct. 11, 2021).

Tyson's Policy is compliant with GA-40 as it permits employees to submit a request for an exemption from the Policy based on the employee's religious beliefs or medical reasons. Employees who received approval for their medical and/or religious exemption request were then provided with the opportunity to participate in LOA Plus. Because Tyson's Policy complies with GA-40, Plaintiffs' reliance on GA-40 is misplaced and fails to support their public policy violation.

In addition to the foregoing, vaccination policies similar to the Policy enacted by Tyson are not illegal and do not violate public policy. *See Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 527 (S.D. Tex. 2021). In *Bridges*, Houston Methodist Hospital required employees to be vaccinated against COVID-19. 543 F. Supp. 3d at 526. The plaintiff filed suit arguing the vaccine mandate, in part, violated public policy. *Id.* In finding the vaccine requirement did not violate public policy, the court stated as follows:

> Although her claims fail as a matter of law, it is also necessary to clarify that Bridges has not been coerced. Bridges says that she is being forced to be injected with a vaccine or be fired. This is not coercion. Methodist is trying to do their business of saving lives without giving them the COVID-19 virus. It is a choice made to keep staff, patients, and their families safer. Bridges can freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply need to work somewhere else.

*Id.* at 528.

As in *Bridges*, Tyson implemented its Policy to protect its team members and prevent the spread of COVID-19. Plaintiffs were not compelled to take the vaccine. Tyson's Policy and implementation of same is not a violation of public policy. *See id*.; *see also Hayes v. Univ. Health Shreveport, LLC*, 2021-1601 (La. 1/7/22), 332 So. 3d 1163, 1168–69 (declining to find that an

employer's requirement that its employees be vaccinated against COVID-19 violated public policy or warranted the creation of an exception to Louisiana's employment at-will doctrine).

### 2. Plaintiffs' Reliance on GA-40 is Preempted by Federal Law.

Assuming *arguendo* GA-40 prohibited Tyson's Policy, which it does not, GA-40 is preempted by the Federal Meat Inspection Act ("FMIA"), which provides,

> Requirements within the scope of this chapter with respect to premises, facilities and operations of any establishment at which inspection is provided under subchapter I of this chapter, which are in addition to, or different than those made under this chapter may not be imposed by any State . . . .

21 U.S.C. § 678.

This provision "sweeps widely" and "prevents a State from imposing any additional or different—even if nonconflicting— requirements that fall within the scope of the Act and concern a slaughterhouse's facilities or operations." *Nat'l Meat Ass'n. v. Harris*, 565 U.S. 452, 459–60 (2012).

Significantly, whether a requirement falls "within the scope of" the FMIA—and is therefore preempted—does not depend on whether the United States Department of Agriculture ("USDA") has adopted or rejected the requirement. That is "irrelevant," the Supreme Court has noted, "because the FMIA's preemption clause covers not just conflicting but also different or additional state requirements." *Harris*, 565 U.S. at 461. Instead, the question is whether the USDA could have adopted the requirement: if the USDA "could issue regulations under the FMIA . . . mandating" the requirement at issue, then the state's requirement is preempted. *Id.* at 466.

In this case, not only *could* the USDA "issue regulations," it has *in fact* already issued regulations addressing "infectious disease" (9 C.F.R. § 416.5(c)) and personal protective equipment (9 C.F.R. § 416.2(b) and 9 C.F.R § 416.5(b)) within meat processing facilities. The USDA's regulation of "sanitary conditions" (21 U.S.C. § 608) applies to individuals working at

meat-processing facilities, not just the animals they process.  Its preemptive scope applies broadly to state laws governing the "premises, facilities and operations" of meat-processing companies. 21 U.S.C. § 678.  The Food Safety and Inspection Service ("FSIS") has specifically issued regulations under the FMIA pertaining to "[e]mployee hygiene" and "disease control," requiring that any employee who "has or appears to have an infectious disease ... or any other abnormal source of microbial contamination" be excluded from facility operations. 9 C.F.R. § 416.5(c).  The regulations also extend to cover personal protective equipment and various "hygienic practices" needed to guard against "the creation of insanitary conditions." *Id.* § 416.5(a), (b).  Thus, Tyson's Policy, which serves to prevent the spread of COVID-19, an infectious disease caused by microbial infection, falls within the scope of the FMIA, as evidenced by its implementing regulations.

Preemption applies wherever a plaintiff seeks to impose, as a matter of state law, different requirements for meat-processing employees than those adopted by the USDA.  In *Wazelle v. Tyson Foods, Inc.*, the Court stated, "workplace conditions and procedures related to disease prevention implicate food safety, which could bring Plaintiff's claims under the ambit of the FMIA."  No. 2:20-CV-203-Z, 2021 WL 2637335, at *3 (N.D. Tex. June 25, 2021), *vacated and remanded on other grounds*, 2022 WL 4990424 (5th Cir. Oct. 03, 2022).[7]  The FMIA expressly preempts any "[r]equirement" that falls "within the scope of" the FMIA, and the FMIA absolutely controls on these matters.  The requirements of GA-40 are "in addition to, or different than" the requirements the USDA has imposed regarding infectious disease.  Tyson's Policy certainly relates to workplace conditions and procedures concerning disease prevention and implicates food safety. Thus, Plaintiffs' claim of wrongful termination based on GA-40 is preempted under the express terms of 21 U.S.C. § 678.

---

[7] *Accord Johnson v. Tyson Foods*, 580 F. Supp. 3d 382, 388 (N.D. Tex. 2022) (finding a plaintiff's negligence claims relating to PPE fell within the FMIA's express preemption provision).

**D.      Plaintiffs' Claim of Disparate Impact Discrimination is Futile.**

Plaintiffs allege Tyson's Covid-19 Pilot Program, which is not the same as Tyson's Policy, had a disparate impact on them because, as unvaccinated employees, they had to wear a mask and face shield.

To establish a *prima facie* case of disparate impact, Plaintiffs must show (1) there was an identifiable, facially neutral employment policy, (2) there was a disparate effect on a protected class, (3) and there is a causal connection between the disparate effect and the employment policy. *McClain v. Lufkin Indus.*, 519 F.3d 264, 275 (5th Cir. 2008) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)).  Plaintiffs' disparate impact claim fails as a matter of law because they are unable to establish the second element of a *prima facie* case.

**1.      Unvaccinated Individuals are Not a Protected Class.**

Plaintiffs allege "Tyson … discriminated against unvaccinated employees by forcing them to wear both a face mask and a face shield simultaneously."  (Dkt. #1, at p. 6).  Plaintiffs' claim fails because "unvaccinated employees" do not constitute a protected class for purposes of disparate impact discrimination.

To qualify as a protected class, the class must be connected to one of the federal or state protected classes: race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). Plaintiffs' "protected class" is comprised of those who are unvaccinated.[8]  Persons who are unvaccinated are not a protected class under Title VII.  *See id.*  Accordingly, the disparity between vaccinated and unvaccinated individuals allegedly resulting from Tyson's Pilot Program is not actionable and cannot serve as a basis for Plaintiffs' disparate impact claim.  As such, summary judgment is warranted.

---

[8] *See* Keeler Depo, at 96:8-11; Gossett Dep., at 83:16-21.

2.      **Tyson's "Covid-19 Pilot Program" is a Business Necessity.**

Even if Plaintiffs could successfully establish a *prima facie* case, which they cannot, Tyson can rebut their *prima facie* showing of disparate impact by proving that the Pilot Program is a business necessity. *See Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006).

Tyson is required, by federal statute, to ensure that its employees and workplaces are safe and free from any hazards that may cause serious harm or death to its employees.  29 U.S.C.A. § 654.  This includes creating COVID-19 policies to help prevent the spread of a contagious and deadly disease.  *Updated Interim Enforcement Response Plan for Coronavirus Disease 2019 (COVID-19)*, U.S. Dep't of Labor, OSHA (Jul. 7, 2021), https://www.osha.gov/laws-regs/standardinterpretations/2021-07-07.

In complying with its obligation to protect is team members, Tyson implemented its Pilot Program for the purpose of keeping its team members safe and healthy while keeping operations running during an unprecedented worldwide pandemic.  Because Tyson's Pilot Program is a business necessity, Plaintiff's disparate impact claim fails.

**E.      Plaintiffs' Claim of Promissory Estoppel Fails as a Matter of Law.**

Plaintiffs aver they are entitled to their 2021 year-end bonuses because they performed their respective job duties prior to their termination.  As an initial matter, Plaintiffs' claim fails as the relevant bonus policy provides that a team member must be employed on the date bonuses, which are discretionary, are administered under the plan.  *See* Kyker Decl., ¶ 21.  Tyson administered 2021 year-end bonuses after November 1, 2021—the date Plaintiffs' employment with Tyson ended.  *Id.*, at ¶ 22.  Because Plaintiffs were no longer employed at the time bonus payments were issued, they are not entitled to any "promised" bonuses pursuant to the plain language of the applicable policy.

Setting aside the foregoing, to prevail on a cause of action for promissory estoppel, Plaintiffs must establish (1) there was a promise, (2) foreseeability of reliance by the promisor (Tyson), (3) substantial and reasonable reliance by the promisee (Plaintiffs) to their detriment, and (4) enforcing the promise is necessary to avoid injustice. *Collins v. Walker*, 341 S.W.3d 570, 573–74 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Sipco Servs. Marine v. Wyatt Field Serv. Co.*, 857 S.W.2d 602, 605 (Tex. App.—Houston [1st Dist.] 1993, no writ)).  Plaintiffs' claim of promissory estoppel fails as a matter of law because, as at-will employees, Plaintiffs cannot demonstrate detrimental reliance on any alleged promise.

Texas courts have consistently held that a promise to provide employment, which is subject to termination at any time or for any reason, does not provide any assurances about the employer's future conduct and does not provide a basis for detrimental reliance as a matter of law.  *See Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 937 (Tex. App.—Houston [14th Dist.] 1994, no writ); *see Galvez v. Tornado Bus. Co.*, No. 05-13-00993-CV, 2015 WL 1730175, at *1 (Tex. App.—Dallas Apr. 15, 2015, pet. denied).

In *Galvez*, the plaintiff filed suit alleging, in part, that his former employer made promises, verbally and in writing, relating to his compensation.  2015 WL 1730175, at *1.  According to the plaintiff, his former employer failed to compensate him in accordance with the alleged promises. *Id.*, at *2.  As a result, the plaintiff filed a lawsuit asserting, in pertinent part, a claim for promissory estoppel.  *Id.*, at *10.  The Dallas Court of Appeals affirmed summary judgment on the plaintiff's promissory estoppel claim due to the lack of detrimental reliance.  *Id.*  Specifically, the Appellate Court stated,

> The Tornado Parties argue that the trial court properly granted summary judgment on the promissory estoppel claim because Galvez, as an at-will employee, could not have detrimentally relied upon the Tornado Parties' promise of employment for a specific period **or for a certain compensation** because the Tornado Parties could

terminate the employment relationship for any reason and at any time. **We agree. 'A promise to provide employment which is subject to termination at any time or for any reason does not provide any assurances about the employer's future conduct, and does not provide a basis for detrimental reliance as a matter of law.'**

*Id.* (emphasis added)

Here, Plaintiffs, at-will employees, claim Tyson promised they "would receive their respective bonus amount if [they] performed their respective jobs at specified levels of diligence and competence during the most recent fiscal year." (Dkt. #1, at p. 7). Taking Plaintiffs' allegations as true, for purposes of these proceedings only, their claim fails as "*any* assurances about the employer's future conduct . . . does not provide a basis for detrimental reliance *as a matter of law*." *Galvez*, 2015 WL 1730175, at *10 (emphasis added) (citations omitted). As in *Galvez*, summary judgment is appropriate on Plaintiffs' promissory estoppel claim as there is no detrimental reliance as a matter of law. *See id.*

## V.    CONCLUSION

Accordingly, for the reasons stated herein, Tyson requests the Court enter an order granting its Motion for Summary Judgment and dismissing Plaintiffs' claims with prejudice. Tyson further requests any and all other relief to which it is entitled.

Dated: October 25, 2023

Respectfully submitted,

/s/ Ross G. Reyes
_____
Sherry L. Travers
State Bar No. 00793097
Ross G. Reyes
State Bar No. 24105707

**LITTLER MENDELSON, P.C.**
2001 Ross Avenue, Suite 1500
Dallas, TX 75201.2931
214.880.8100
214.880.0181 (Fax)
stravers@littler.com
rgreyes@littler.com

**ATTORNEYS FOR TYSON
FRESH MEATS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2023, the foregoing document was electronically filed in the above and foregoing with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following:

Jared Woodfill
Woodfill Law Firm, P.C.
3 Riverway, Suite 750
Houston, Texas 77056
woodfillservice@gmail.com
jwoodfill@woodfilllaw.com
*Attorney for Plaintiffs*

/s/ Ross G. Reyes
_____
Ross G. Reyes